IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TAMARA L. MILLER,<br><br>     Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br>     Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF COMMISSIONER<br><br>Case No.: 2:12-cv-1185-BCW<br><br>Magistrate Judge Brooke C. Wells |

  All parties in this case have consented to having United States Magistrate Judge Brooke C. Wells conduct all proceedings in this case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]

  Plaintiff Tamara L. Miller ("Plaintiff") seeks judicial review of the determination of the Commissioner of the Social Security Administration that denied her application for Social Security Disability and Disability Insurance Benefits. After careful consideration of the written briefs and the administrative record, the Court has determined that oral argument is unnecessary and issues the following Memorandum Decision and Order AFFIRMING the decision of the Commissioner.

---
[1] See 28 U.S.C. §636(c); F.R.C.P. 73; docket no. 16.

# BACKGROUND[2]

A. **Procedural History**

Plaintiff, Tamara Miller, who was born on December 21, 1967,[3] filed an application for Disability, Disability Insurance Benefits and Supplemental Security Income on March 24, 2009.[4] In her application for benefits, Plaintiff alleged an onset date of disability of May 1, 2003.[5] Plaintiff meets the insured status requirements through December 31, 2007.[6]

Plaintiff contends she is disabled due to both physical and mental impairments.[7] Plaintiff's claims were initially denied on May 29, 2009, and upon reconsideration on July 9, 2009.[8] Plaintiff then requested an administrative hearing.[9] A hearing before an Administrative Law Judge ("ALJ") was held on June 17, 2011 in St. George, Utah.[10] On July 1, 2011, the ALJ issued a written decision denying Plaintiff's claim for benefits.[11] Plaintiff then appealed the denial to the Social Security Appeals Council,[12] which denied a review of the ALJ's decision on November 27, 2012.[13] Pursuant to 42 U.S.C. § 405(g), this appeal followed.

B. **Hearing Testimony**

At the hearing before the ALJ, testimony was received from Plaintiff, a medical expert, Dr. Michael Enright, and a vocational expert, Mr. Kenneth Lister.[14]

---

[2] The Court finds that the parties have adequately described Plaintiff's medical history in the briefs. Therefore, the Court will only briefly describe Plaintiff's history contained in the ALJ's opinion in order to provide context for the issues presented herein.
[3] Administrative Record, docket no. 9 [hereinafter referred to as "Tr."] at 60.
[4] Tr. at 25.
[5] Id.
[6] Tr. at 27.
[7] Opening Br., docket no. 17 at p. 3.
[8] Tr. at 25.
[9] Id.
[10] Id., 60.
[11] Tr. at 22, 25-35.
[12] Tr. at 17.
[13] Tr. at 1.
[14] Tr. at 59.

Plaintiff through her attorney, Kevin O'Connor testified that Plaintiff suffers from "chronic severe back pain, lumbar spinal stenosis, lumbar disc extrusion, lumbar radiculopathy, some scoliosis, fibromyalgia, depression and Hepatitis C."[15] As to the Hepatitis C, Plaintiff's counsel stated that this was a recent diagnosis and "a course of treatment has not been established" as of the time of the hearing.[16] Plaintiff's counsel testified that Plaintiff left her last job due to her back problems and has not been able to return for the same reasons.[17] Further, counsel testified that "…as a result of severe pain and side effects from medication, [Plaintiff] requires bed rest during the day that would result in an unreasonable number and length of break periods and absences beyond customary tolerances."[18]

Plaintiff was then questioned by the ALJ and testified that the last job was as an Animal Technician at Petco.[19] Plaintiff stopped working there in 2003, after only working for three months.[20] Plaintiff testified that the longest job she had ever had was working at the Oasis Family Fun Center in Mesquite, Nevada.[21] Plaintiff stated that she worked there for almost five years.[22] When asked by the ALJ why Plaintiff is not working now, Plaintiff responded: "[i]t's very difficult to get around because of the pain. The only time that I get any relief is if I'm laying down. Otherwise, I'm in pain 24/7." Plaintiff then testified that compared to her other ailments, her back pain caused her the most problems.[23] Plaintiff testified that she had back surgery to fuse her spine in 2004.[24] Plaintiff testified before this surgery he was in an extreme amount of back pain and the pain radiated down Plaintiff's right leg and into her foot resulting in

---

[15] Tr. at 62.
[16] Id.
[17] Tr. at 63.
[18] Id.
[19] Tr. at 68.
[20] Tr. 68-69.
[21] Tr. at 69
[22] Id.
[23] Tr. at 70.
[24] Id.

numbness and tingling.[25] After Plaintiff's first back surgery, she testified that some of the numbness in her leg improved by 30 to 40 percent.[26] Thereafter, Plaintiff still experienced back pain so she received epidurals, trigger point injections and was seen by a pain management physician who put Plaintiff on pain medication.[27] Plaintiff then had another back surgery in 2008 because she had discs right above the prior fusion that were bulging.[28] Plaintiff testified that after this second surgery her back problems got worse.[29] Plaintiff testified "[t]he pain intensified. The nerve damage was worse in my right leg. I have pain down both legs. I have muscle spasms in both legs. And I have muscle spasms in my lower back."[30] Plaintiff then testified on a scale of one to ten, with ten being the highest rating, Plaintiff's pain is seven and eight with medication and has remained constant since before her first surgery.[31] Plaintiff testified she can only sit or stand or fifteen to twenty minutes, and can only walk for 15 minutes.[32] Plaintiff reported that she uses a cane for assistance and fell in the shower after he legs gave out on her.[33] As to problems with her hands, Plaintiff testified it is difficult for her to hold things because of weakness in her hands and arms from fibromyalgia.[34] Plaintiff testified that her depression makes her very moody.[35] Plaintiff feels worthless and has thoughts of suicide.[36] Plaintiff testified she is on the following medications: Gabapentin, Ambien, Zenaflex,

---

[25] Tr. at 71, 73.
[26] Tr. at 73-74.
[27] Tr. 74.
[28] Tr. at 75.
[29] Id.
[30] Id.
[31] Id.
[32] Tr. at 77.
[33] Tr. at 78.
[34] Tr. at 78-79.
[35] Tr. at 79.
[36] Tr. at 80.

Oxycontin, Oxycodone, Topamax, Paxil and a steroid of some sort.[37] Plaintiff reported that these medications have side effects.

Plaintiff testified that during a typical day she wakes up, takes her medication, makes a cup of coffee, has a cigarette and lays back down for pretty much the rest of the day.[38] She watches television and fixes herself lunch "once in a while."[39] Plaintiff's mother prepares her evening meals.[40] Plaintiff testified she has difficulty caring for her personal hygiene needs because of her falls in the bathtub.[41]

Based on hypotheticals provided by the ALJ, the vocational expert Kenneth Lister testified that Plaintiff would be capable of performing her past relevant work as a pet supply person and management trainee.[42] Thereafter, the medical expert, Dr. Michael Enright, a licensed psychologist testified regarding Plaintiff's mental impairments.[43] Dr. Enright testified that a primary care provider diagnosed Plaintiff with depression.[44] This same provider prescribed psychotropic medication to Plaintiff.[45] Dr. Enright testified that there were no records of any psychiatrist or psychologist who may have treated Plaintiff.[46] Dr. Enright testified that Plaintiff had presented evidence to support the "A" criteria for a listing of 12.04.[47] However, as to the "B" and "C" criteria, Dr. Enright testified that Plaintiff did not meet the requirements for these listings.[48]

---

[37] Tr. at 81.
[38] Tr. at 83.
[39] Id.
[40] Id.
[41] Id.
[42] Tr. at 93.
[43] Tr. at 96.
[44] Tr. at 98.
[45] Id.
[46] Id.
[47] Tr. at 99.
[48] Tr. at 99-100.

C. **ALJ's Decision**

At the outset, the ALJ's opinion indicated that "[t]he claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2007. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits."[49]

In the ALJ's decision, the ALJ found at Step One of the required sequential evaluation process[50] that Plaintiff had not engaged in substantial gainful activity since May 1, 2003, the alleged onset date.[51] At Step Two, the ALJ found Plaintiff's severe impairments to be (1) degenerative disc disease of the lumbar spine; (2) hepatitis C; and (3) fibromyalgia.[52] The ALJ found Plaintiff's depression to be a non-severe impairment because it does not cause Plaintiff "more than minimal limitation in the claimant's ability to perform basic mental work activities..."[53] At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments contained within the regulations.[54]

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "a range of light work," with the following additional limitations:

- No more than occasional climbing stairs, squatting, bending, stooping, kneeling, reaching above shoulder level, using foot controls and driving, and,
- No more than frequent pushing and pulling, turning arms and wrists, opening and closing fists, and using hands and fingers.[55]

---

[49] Tr. at 25.
[50] See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(explaining the five-step evaluation process for determining if a claimant is disabled).
[51] Tr. at 27.
[52] Id.
[53] Tr. at 28.
[54] Tr. at 29.
[55] Id.

6

As to Plaintiff's credibility, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[56] In making this determination, the ALJ "considered [Plaintiff's] activities of daily living, treatment (including the type, dosage and side effects of any medication, and other non-medication treatments), location, duration and frequency of pain, and precipitating and aggravating factors."[57] The ALJ then found that Plaintiffs statements as to her symptoms were "somewhat out-of-proportion to the medical findings, and generally not compatible or reasonably consistent with the medical evidence of record and all other evidence-and therefore not fully persuasive."[58] The ALJ then found Plaintiff's lack of credibility not to be intentional but rather "just that the claimant can perform at higher levels than she states, or perceives she can."[59] The ALJ then noted that "the medical record fails to support the claimant's allegations of totally disabling limitations due to pain."[60] Specifically, the ALJ reasoned

> [i]f [Plaintiff] were truly unable to sit, stand, or walk for more than 15-20 minutes, perform any bending, twisting, pushing, and pulling, or perform any daily activities other than watching television, one would expect it to be mentioned somewhere in the medical record, especially where she was seeing a pain specialist on a frequent basis. Additionally, the medical record fails to note the extreme medication side effects that the claimant testified to at the hearing, including extreme fatigue, insomnia, and dental problems. The complete lack of any actual limitations noted anywhere in the medical record is damaging to the claimant's credibility, as there is nothing objective that corroborates her allegations of extreme functional limitations.
> …
> [t]he medical records contain a very significant gap of nearly two and one half years between February 2005 and September 2007. … This large treatment gap

---

[56] Id. at 31.
[57] Tr. at 31.
[58] Tr. at 32.
[59] Id.
[60] Id.

casts considerable doubt on the claimant's assertion that she has been completely disabled due to back pain since 2003. If she had truly been as functionally limited as she has alleged, it is unimaginable she could go a period of two years without any treatment.[61]

The ALJ then noted that "there are no opinion statements made by an[y] treating or consulting physicians, and thus, the only medical opinion evidence is that of the State agency physicians."[62] The ALJ gave these opinions "great weight" because they had reviewed the medical record and "…their opinions are consistent with the medical evidence, and they are familiar with the Agency's standards"[63]

Before moving on to Step Four, the ALJ summarized his findings as to Plaintiff's residual functional capacity. The ALJ found "the medical evidence of record failed to corroborate [Plaintiff's] allegations as there is no objective support for the extreme limitations [Plaintiff] alleged. Therefore, as this is ultimately a medial decision, there is simply no objective support for any more restrictive limitations than those included in the above state residual functional capacity."[64] At Step Four, the ALJ found Plaintiff is capable of performing her past relevant work as a pet and supply person and management trainee.[65] [66] At Step Five, the ALJ found Plaintiff has not been under disability as defined by the Social Security Act."[67]

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether his findings are supported by "substantial evidence" and whether the correct legal standards were applied.[68]

---

[61] Id.
[62] Tr. at 33.
[63] Id.
[64] Tr. at 34.
[65] Id.
[66] Id.
[67] Id.
[68] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); Ruthledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1993).

8

If supported by substantial evidence, the findings are conclusive and must be affirmed.[69] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[70] Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[71] Moreover, a decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record."[72]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[73] In its review, the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[74] However, a reviewing Court should not re-weigh the evidence or substitute its own judgment for that of the ALJ's.[75] Further, the Court "…may not 'displace the agenc[y]'s choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo."[76] Lastly, "[t]he failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[77]

In applying these standards, the Court has considered the Administrative Record, relevant legal authority, and the parties' briefs and arguments. The Court deems oral argument to be unnecessary, and finds as follows:

---

[69] Richardson v. Perales, 402 U.S. 389, 401 (1981).
[70] Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).
[71] Zolanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2000).
[72] Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(internal citation omitted).
[73] Id. at 1066.
[74] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999).
[75] Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).
[76] Lax, 489 F.3d at 1084 (quoting Zoltanski, 372 F.3d at 1200).
[77] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005)(internal citations omitted).

## ANALYSIS

In her appeal, Plaintiff raises two issues: (1) whether the ALJ erred by failing to include all Ms. Miller's established limitations in the residual functional capacity assessment and (2) whether the ALJ erred in his evaluation of Ms. Miller's credibility. The Court will discuss each of these issues in turn.

### A. Residual Functional Capacity

Plaintiff argues the ALJ erred by failing to include all of Plaintiff's impairments in her residual functional capacity. Specifically, Plaintiff argues that the ALJ's reliance on the opinions of the state agency physicians is erroneously because these physicians' opinions were rendered in 2009 or sooner. Plaintiff argues that the record contains more than 100 pages of additional medical evidence from after 2009. Therefore, these records which evidence the worsening of Plaintiff's spinal impairments, increasing headaches and mobility and balance issues and Plaintiff's diagnosis of Hepatitis C were not considered by the state agency physicians. Therefore, "the ALJ's failure to account for the new diagnoses and worsening [of Plaintiff's] impairments that occurred after the RFC opinions were given is an error."[78]

Defendant argues the ALJ's limitations within the RFC "accounted for the very conditions that Plaintiff alleges were overlooked."[79] Specifically, the ALJ included manipulative limitations in his RFC (i.e. "no more than frequent pushing and pulling, turning arms and wrists, opening and closing fists, and using hands and fingers."[80]) Defendant argues this accounts for Plaintiff's complaints associated with Hepatitis C and Fibromyalgia. In addition, the ALJ's limitations that Plaintiff is limited to "no more than occasional climbing stairs, squatting,

---

[78] Docket no. 17 at p. 9.
[79] Docket no. 22 at p. 11.
[80] Tr. at 29.

10

bending, stooping, kneeling, reaching above shoulder level, using foot controls and driving…"[81] account for Plaintiff's complaints that her back pain increased and radiated from her back down to her legs.

Even disregarding the Plaintiff's alleged onset date and date of last insured, the Court finds that the ALJ's RFC determination to be supported by substantial evidence. The RFC reflects the ability to do physical, mental, and other work activities on a sustained basis despite limitations from the claimant's impairments.[82] In determining the claimant's RFC, the decision maker considers all of the claimant's medical determinable impairments, including those considered not "severe."[83] Further, the ALJ must base RFC assessments on all relevant evidence in the record, not just the medical evidence.[84]

In the instant case, Plaintiff did not provide any medical opinions as to her symptoms or prognosis.[85] However, the ALJ noted that despite only having the State Agency physician opinions, he "considered the entire record,[86] all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence…"[87] Based upon the Court's review of the record in this case, the Court finds no reason to doubt the ALJ's statement that he reviewed the relevant evidence. Moreover, the Court agrees with the arguments set forth by Defendant that the ALJ took into account Plaintiff's limitations with regard to her Hepatitis C and Fibromyalgia with his limitations for her hands. Although the ALJ did not specifically discuss as the Plaintiff suggests, Plaintiff's headaches and incontinence issues, the ALJ was not required to make specific findings as to these impairments because he

---

[81] Id.
[82] See 20 C.F.R. §§ 404.1545, 416.945.
[83] See 20 C.F.R. § 416.945 (a)(2).
[84] 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); SSR 96-8p.
[85] Tr. at 33 ("In the present case, there are no opinion statements made by…treating or consulting physicians, and thus, the only medical evidence is that of the State agency physicians.")
[86] Tr. at 29.
[87] Id

did not find them to be medically determinable. Therefore, the Court finds that the ALJ's findings are supported by substantial evidence and free from legal error.

### B. Plaintiff's Credibility

Plaintiff argues the ALJ erred in three ways in assessing her credibility. One, Plaintiff argues the ALJ erred in his evaluation of Plaintiff's credibility because "the fact that a medical provider did not provide an RFC assessment in his treatment notes is not substantial evidence that supports the ALJ's finding that Ms. Miller was not credible in her report of symptoms."[88] Second, Plaintiff argues the ALJ erred with regard to his assessment of Plaintiff's medication side effects. Finally, the Plaintiff argues that the ALJ's decision regarding the two-year gap in treatment is not supported by substantial evidence because Plaintiff was unable to secure Medicaid funding that time and that was the reason for her not seeking treatment.

Defendant on the other hand, argues that the ALJ's determination as to Plaintiff's credibility is supported by substantial evidence because aside from her own subjective allegations, Plaintiff does not identify any record evidence which supports her contention that she cannot perform the demands of the RFC determination. Further, the Defendant argues that the two year gap in treatment supports the ALJ's findings that Plaintiff's limitations are not as severe as she contends. Defendant also argues that when Plaintiff did seek treatment in late 2007, after the two year gap in treatment, she reported to her physician that she "was doing well up until two months ago when she developed severe pain involving the back with radiation."[89] Plaintiff reported in November 2007 that her low back pain had "gradually returned in the past year."[90] Therefore, despite Plaintiff's arguments that the two-year gap in treatment was due to Plaintiff's Medicaid status, Defendant argues the ALJ was reasonable in concluding that

---
[88] Docket no. 17 at p. 14.
[89] Tr. at 318.
[90] Tr. at 291.

12

Plaintiff's limitations were actually not as severe as Plaintiff alleges. With regard to medication side effects, Defendant argues the ALJ's reliance on the lack of objective medical evidence to support Plaintiff's testimony was a reasonable basis for the ALJ to discount Plaintiff's credibility.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."[91] However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[92]

The Court finds that substantial evidence in the record supports the ALJ's determination as to Plaintiff's credibility. The Court finds as very persuasive the fact that Plaintiff has not provided any opinion evidence as to her limitations and none of her treating physicians whom she saw frequently, commented on her limitations or made any mention of the fact that Plaintiff can or cannot work. While this may be explained because the Plaintiff's treatment providers were treating Plaintiff's pain symptoms and not assessing her functionality, the fact remains that the ALJ's conclusion is a reasonable one. Further, the ALJ reasonably discounted Plaintiff's claims with regard to the use of an assistance device to walk and her medication side effects. As to the device to assist Plaintiff's walking, the records show that Plaintiff did not use this device regularly nor did the physicians make any statements other than to note its use. As to the medication side effects, the Court agrees with the Defendants' arguments. The Court further finds that Plaintiff is requesting that the Court re-weigh the evidence as to Plaintiff's credibility. The Court is not allowed to do this. Furthermore, the record indicates that "other evidence does

---

[91] Diaz v. Secretary of Health & Human Srvcs., 898 F.2d 774, 777 (10th Cir. 1990).
[92] Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

not overwhelm" the ALJ's opinion.[93]. Rather, upon considering the foregoing and other evidence in the record, the Court finds the ALJ's credibility finding to be supported by substantial evidence and free from legal error.

## **CONCLUSION & ORDER**

For the foregoing reasons, the Court finds that Plaintiff's arguments do not warrant a remand in this case. Therefore, IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

DATED this 14 March 2014.

*/s/ Brooke C. Wells*

Brooke C. Wells
United States Magistrate Judge

---

[93] Wall v. Astrue, at 1048.